GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONIQUE CHAVES and YVETTE BORGES, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; UNFAIR BUSINESS PRACTICES; FRAUD, DECEIT, AND/OR MISREPRESENTATION; NEGLIGENT MISREPRESENTATION; AND UNJUST ENRICHMENT<br><br>JURY TRIAL DEMANDED |

# INTRODUCTION

1. Plaintiffs Monique Chaves and Yvette Borges ("Plaintiffs"), by and through their counsel, bring this Class Action Complaint against Defendant Walmart Inc. ("Defendant" or "Walmart"), on behalf of themselves, the general public, and those similarly situated, to seek redress for Defendant's deceptive and unlawful practices in labeling and marketing its Equate and Parent's Choice brand baby and children's shampoos, washes, and detangling sprays (the "Products," as further defined below) as "Tear Free," "Tear-Free," "Tear Free Formula," "No Tears," or "No Tears Formulation" (collectively, the "Tear Free Claims"), when in fact the Products contain multiple ingredients that are known eye irritants and confirmed by independent laboratory testing to damage eye tissue.

2. Defendant markets its Equate and Parent's Choice baby bath and hair care products to parents for their babies and children, prominently labels them with the Tear Free Claims. But the Products are not tear free. Each contains ingredients classified under internationally recognized hazard standards as causing eye irritation and/or serious eye damage, such as cocamidopropyl betaine, citric acid, sodium benzoate, and potassium sorbate. For example, independent testing of Defendant's Equate Tear-Free Mild Baby Wash using the internationally accepted OECD Test Guideline 492 found that the product damaged eye tissue, leaving only 17.3% of the tissue's cells alive—worse than the 29.4% left alive by methyl acetate, a chemical recognized as an eye irritant.

3. Reasonable consumers understand the Tear Free Claims to mean the product will not irritate, sting, or burn eyes, especially when made on products intended to be used on babies and children. Plaintiffs and the Class would not have purchased the Products, or would have paid less for them, had they known that the Products contain eye irritants and are not, in fact, tear free.

**PARTIES**

4. Plaintiff Monique Chaves is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Pittsburg, California, in Contra Costa County. She makes her permanent home in California and intends to remain in California.

5. Plaintiff Yvette Borges is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Tulare, California, in Tulare County. She makes her permanent home in California and intends to remain in California.

6. Defendant Walmart Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Bentonville, Arkansas. Walmart owns, markets, and sells the Equate and Parent's Choice brands, and its name appears on the Products' labels as their distributor.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are more than 100 members of the proposed Class; and Plaintiffs and Defendant are citizens of different states.

8. The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California, including through its hundreds of retail stores in California and its website, Walmart.com. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including within this District.

10. In accordance with California Civil Code Section 1780(d), Plaintiff Chaves concurrently files herewith a declaration, attached as Exhibit A, establishing that, at various times

throughout the class period, she purchased the Equate Tear-Free Mild Baby Wash at a Walmart store in Pittsburg, California.

11. Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### A. Defendant Falsely Markets and Sells the Products With the Tear Free Claims.

12. Defendant manufactures, distributes, markets, advertises, and sells a variety of baby and children's personal care products under its own store brands, including Equate and Parent's Choice. The products have packaging that predominately, uniformly, and consistently states on the principal display panel of the product label that the product is "Tear Free," "Tear-Free," "Tear Free Formula," "No Tears," or "No Tears Formulation." Plaintiffs have attached, as Exhibit B, a non-exhaustive list of the Equate and Parent's Choice products that make (or made within the last four years) the Tear Free Claims. The products listed in Exhibit B, and any other Walmart product that makes or made a Tear Free Claim or similarly claims to be tear free, will hereinafter be referred to as the "Tear Free Products" or the "Products."

13. The Tear Free Claims were uniformly communicated to Plaintiffs and every other person who purchased any of the Products. The same or substantially similar Tear Free Claim has appeared on each Product throughout the class period.

14. Defendant prominently represents on the front label of each Product that it is "Tear Free," "Tear-Free," "Tear Free Formula," "No Tears," or "No Tears Formulation." The Tear Free Claims are prominently stated on the front label, typically in a colored banner or badge near the product name. Representative images of the front labels are shown below:







15. Defendant also repeats the Tear Free Claims in the Products' names and descriptions on the product listings on Walmart.com, for example, Equate Tear-Free Baby Shampoo and Equate Baby Tear-Free Detangler Spray. Walmart.com further lists "No Tears" as a "Hair care key benefit" of the Equate Tear-Free Baby Shampoo, and describes it as having a "Tear-free formula."

**B. Reasonable Consumers Understand the Tear Free Claims to Mean the Products Will Not Irritate Eyes.**

16. Reasonable consumers understand the Tear Free Claims to mean the Products will not irritate, sting, or burn eyes, especially when made on products intended to be used on babies and children. That is the plain meaning of the phrase.

17. The Tear Free Claims are material to reasonable consumers. Shampoos, washes, and detanglers are applied to the hair and face, where they can readily reach the eyes during ordinary use. Whether a product will irritate, sting, or burn the eyes when that happens is therefore important to reasonable consumers, particularly for a product intended to be used on babies and children, and reasonable consumers choose, and pay more for, products that make the Tear Free Claims.

18. Defendant knows this. It places the Tear Free Claims in a prominent position on the front label of every Product, and it ties the Products to Johnson's "No More Tears" heritage through its "Compare to" statements, precisely because the claims drive purchasing decisions.

**C. The Products Contain Known Eye Irritants.**

19. Contrary to Defendant's Tear Free Claims, each of the Products contains one or more ingredients that are known eye irritants. Many of these ingredients are classified under the Globally Harmonized System of Classification and Labelling of Chemicals ("GHS")—the United Nations and United States system for classifying chemical hazards—as causing eye irritation and/or serious eye damage. These ingredients are disclosed on the Products' own ingredient lists.

20. The GHS is the United Nations' system for classifying chemicals according to their hazards and for communicating those hazards on labels and safety data sheets. In the United States, the Occupational Safety and Health Administration conformed its Hazard Communication Standard to the GHS in 2012. *See* Hazard Communication, 77 Fed. Reg. 17574 (Mar. 26, 2012) (final rule adopting GHS classification system); 29 C.F.R. § 1910.1200.

21. Under the GHS, a chemical that produces tissue damage in the eye is classified in Category 1, "serious eye damage." *See* 29 C.F.R. § 1910.1200, App. A, § A.3. A chemical that produces other harmful changes in the eye, such as clouding of the cornea, inflammation of the iris, or redness and swelling of the membrane covering the eye, is classified in Category 2, "eye irritation." *Id.* Classification in either category therefore means that the chemical meets recognized criteria for harming the eye. A chemical classified in Category 1 carries the hazard statement "Causes serious eye damage" (H318), and a chemical classified in Category 2A carries the hazard statement "Causes serious eye irritation" (H319).

22. Eye irritation causes tears. The cornea, the clear front surface of the eye, is densely supplied with sensory nerve endings, most of which are pain receptors that respond to irritating chemicals. When an irritating substance reaches the eye, it activates these nerves, which produce the stinging and burning sensation of eye irritation. The same nerves also signal the brain to stimulate the lacrimal (tear) gland, which releases tears onto the surface of the eye to wash the irritant away. This reflex tearing is the eye's built-in defense against irritation. A product that irritates the eyes therefore causes tears and is not "tear free."

23. The Products are manufactured using the same small set of surfactants (the cleansing agents that lift away oil and dirt), preservatives, pH adjusters, and fragrance. The

ingredients cocamidopropyl betaine, citric acid, sodium benzoate, and fragrance, for example, appear in most of the Products.

24. Three of those four ingredients are individually classified under the GHS in Category 1 or Category 2. Cocamidopropyl betaine is classified as causing serious eye damage (hazard statement H318) and serious eye irritation (H319), and citric acid and sodium benzoate are each classified as causing serious eye irritation (H319). *See* National Center for Biotechnology Information, PubChem Compound Summaries for Lauramidopropyl Betaine aka Cocamidopropyl Betaine (CID 20280), Citric Acid (CID 311), and Sodium Benzoate (CID 517055), available at https://pubchem.ncbi.nlm.nih.gov.

25. The fourth, "fragrance" or "parfum," is an undisclosed mixture of chemicals that commonly includes eye-irritating constituents. On information and belief, the fragrance in the Products contains one or more eye irritants.

26. Other ingredients in the Products are likewise classified under the GHS as causing serious eye damage (H318) or serious eye irritation (H319), including ethylhexylglycerin (H318), behentrimonium methosulfate (H318), potassium sorbate (H319), sodium lauroyl methyl isethionate (H319), and phenoxyethanol (H319).

27. Surfactants such as cocamidopropyl betaine, sodium lauroyl methyl isethionate, and sodium methyl cocoyl taurate are the cleansing agents in the shampoos and washes. Surfactants are a well-documented cause of eye irritation. When they reach the eye, they injure and kill cells of the cornea; the severity of the resulting irritation corresponds to the extent of that initial injury. *See* Jester, *et al.*, Area and Depth of Surfactant-Induced Corneal Injury Correlates with Cell Death, 39 Investigative Ophthalmology & Visual Science 922 (1998).

**D. Independent Laboratory Testing Confirms the Products Are Not Tear Free.**

28. Plaintiffs' counsel commissioned an independent laboratory to test the Equate Tear-Free Mild Baby Wash for ocular irritation potential using OECD Test Guideline 492, the Organisation for Economic Co-operation and Development's internationally accepted in vitro method for identifying products that do not require classification as eye irritants. The test uses the

EpiOcular™ reconstructed human cornea-like epithelium model, which is derived from normal human cells and models the outer layer of the human cornea. The model has been validated for that purpose.

29. Under OECD Test Guideline 492, the product is applied to the corneal tissue for 30 minutes, after which tissue viability—the percentage of the tissue's cells that are still alive, measured against control tissue—is measured. A product that leaves more than 60% of the tissue viable is predicted to be a non-irritant ("No Category" under the GHS). A product that reduces tissue viability to 60% or below cannot be classified as a non-irritant.

30. The Equate Tear-Free Mild Baby Wash failed. It reduced the viability of the corneal tissue model to a mean of just 17.3%. By comparison, methyl acetate, a recognized GHS Category 2A eye irritant that served as the positive control in the same test, reduced tissue viability to 29.4%. In other words, the Equate Tear-Free Mild Baby Wash killed more of the tissue's cells than a chemical that is classified as an eye irritant.

31. The Equate Tear-Free Mild Baby Wash, which Plaintiff Chaves purchased, contains cocamidopropyl betaine, sodium lauroyl methyl isethionate, fragrance, citric acid, potassium sorbate, and sodium benzoate. The Equate Tear-Free Baby Shampoo that Plaintiff Borges purchased is currently formulated with the same ingredients, and each of the other Products contains the same or similar eye-irritant ingredients. On information and belief, the other Products would therefore produce substantially similar results under OECD Test Guideline 492.

32. Based on these results, the Equate Tear-Free Mild Baby Wash cannot be classified as a non-irritant under OECD Test Guideline 492, and the Tear Free Claims are false and/or deceptive.

### E. Defendant's Back Labels for Three Products Warn Consumers to Keep Them Out of Their Eyes.

33. While Defendant unambiguously makes the Tear Free Claims on the front label, the back labels on at least three Products, the Equate Tear-Free Mild Baby Wash, the Equate Tear-Free Baby Shampoo, and the Equate Baby Tear-Free Detangler Spray, acknowledge that they are not safe for the eyes. The back labels of the Equate Tear-Free Mild Baby Wash and the Equate

Tear-Free Baby Shampoo each state: “Caution: For external use only. Keep out of reach of children. Avoid contact with eyes. If contact occurs, rinse thoroughly with water.” The back label of the Equate Baby Tear-Free Detangler Spray, beneath the words “TEAR FREE,” states: “Caution: For external use only. Avoid contact with eyes. In case of contact, rinse thoroughly with water. Keep out of reach of children.” The ingredients of the Equate Tear-Free Mild Baby Wash, including cocamidopropyl betaine, citric acid, sodium benzoate, potassium sorbate, and fragrance, are the same as or similar to those found in the other Products.

34. A product that must be kept out of the eyes, and that must be rinsed out “thoroughly” if it gets into them, is not tear free. These fine-print disclaimers on these products’ back labels do not cure the front-label misrepresentation. Reasonable consumers would not look beyond prominent front-label claims to discover the truth from small print elsewhere on the package, and in any event the disclaimers contradict, rather than clarify, the Tear Free Claims.

**F. The Products Are Misbranded and Falsely Advertised Under California’s Sherman Law.**

35. The Products are “cosmetics” under California’s Sherman Food, Drug, and Cosmetic Law (the “Sherman Law”), which defines a cosmetic to include any article intended to be applied to the human body for cleansing. Cal. Health & Safety Code § 109900.

36. Under the Sherman Law, a cosmetic is misbranded if its labeling is false or misleading in any particular. Cal. Health & Safety Code § 111730. That standard is identical to the federal standard for misbranded cosmetics. 21 U.S.C. § 362(a). Because the Products contain eye irritants and are not tear free, the Tear Free Claims on the Products’ labels are false and misleading, and the Products are misbranded.

37. Defendant’s manufacture, labeling, and sale of the Products therefore violates the misbranding provisions of the Sherman Law, including Section 111765, which makes it unlawful to manufacture or sell any cosmetic that is misbranded, and Section 111770, which makes it unlawful to misbrand any cosmetic.

38. Defendant’s marketing, advertising, and sale of the Products also violates the false advertising provisions of the Sherman Law. Section 110390 makes it unlawful to disseminate any

false advertisement of a cosmetic, and provides that an advertisement is false if it is false or misleading in any particular. Section 110395 makes it unlawful to manufacture, sell, deliver, hold, or offer for sale any cosmetic that is falsely advertised, and Section 110398 makes it unlawful to advertise any cosmetic that is misbranded. Defendant repeats the Tear Free Claims in its advertising of the Products, including in the Products' names and descriptions on Walmart.com, and those advertisements are false and misleading for the same reasons.

**G. Defendant Has Misled Consumers to Increase Its Profits.**

39. Defendant is the largest retailer in the United States, and its Equate and Parent's Choice store brands are sold in thousands of Walmart stores nationwide, including hundreds in California, and on Walmart.com. The Products are offered in multiple sizes and in multi-packs, such as the "(8 pack) Equate Tear-Free Baby Shampoo, 21 fl oz" and the "(6 pack) Equate Baby Tear-Free Detangler Spray, 10 fl oz."

40. Defendant uses the Tear Free Claims to capture sales from consumers who are looking for gentle, tear-free products. The Tear Free Claims allow Defendant to sell more of the Products, and to charge more for them, than it could if the Products did not make the Tear Free Claims.

41. Defendant has also continued to launch new Equate and Parent's Choice baby and children's products, scents, sizes, and multi-packs, and has replicated the Tear Free Claims on those new products. Because Defendant applies the same Tear Free Claim across its store-brand baby and children's bath and hair care line, it is likely that Defendant will continue to make the Tear Free Claims on existing and new products absent an order from this Court.

42. Before filing this action, Plaintiffs notified Defendant of the false and misleading nature of the Tear Free Claims. Defendant nevertheless continues to sell the Products with the Tear Free Claims. Because of the large volume of sales at stake, Defendant has no incentive to stop selling the Products, to reformulate them, or to change their labeling, absent an order from this Court.

## PLAINTIFFS' EXPERIENCES

**Plaintiff Chaves**

43. On multiple occasions within the last four years, including in or around May 2026, Plaintiff Chaves purchased the Equate Tear-Free Mild Baby Wash from a Walmart store in Pittsburg, California. Plaintiff Chaves purchased the Product for her grandchildren and read and relied on Defendant's representation on the front label that the Product was "Tear-Free," which she understood to mean that the Product would not irritate, sting, or burn eyes or cause tears.

44. As a result of Defendant's false and deceptive Tear Free Claims, the Product had no value, or at a minimum, a much lower value to Plaintiff Chaves.

45. Plaintiff Chaves not only purchased the Product because of the Tear Free Claims, but she also paid more money for the Product than she would have paid for it if it did not have the Tear Free Claims.

46. Had Defendant not falsely and deceptively labeled the Product, Plaintiff Chaves would not have purchased it, or at a minimum, she would have paid less for it.

47. Plaintiff Chaves continues to desire to purchase tear-free products, including those marketed and sold by Defendant. If the Products were truly tear free, Plaintiff Chaves would likely purchase them again in the future. Plaintiff Chaves regularly shops at Walmart and other stores where the Products and other baby shampoos, washes, and detanglers are sold, but she cannot rely on Defendant's Tear Free Claims unless and until Defendant is required to make them truthful.

**Plaintiff Borges**

48. On multiple occasions within the last four years, most recently in 2024, Plaintiff Borges purchased the Equate Tear-Free Baby Shampoo from a Walmart store in Tulare, California. Plaintiff Borges read and relied on Defendant's representation on the front label that the Product was "Tear-Free," which she understood to mean that the Product would not irritate, sting, or burn eyes or cause tears.

49. As a result of Defendant's false and deceptive Tear Free Claims, the Product had no value, or at a minimum, a much lower value to Plaintiff Borges.

50. Plaintiff Borges not only purchased the Product because of the Tear Free Claims, but she also paid more money for the Product than she would have paid for it if it did not have the Tear Free Claims.

51. Had Defendant not falsely and deceptively labeled the Product, Plaintiff Borges would not have purchased it, or at a minimum, she would have paid less for it.

52. Plaintiff Borges continues to desire to purchase tear-free products, including those marketed and sold by Defendant. If the Products were truly tear free, Plaintiff Borges would likely purchase them again in the future. Plaintiff Borges regularly shops at Walmart and other stores where the Products and other baby shampoos, washes, and detanglers are sold, but she cannot rely on Defendant's Tear Free Claims unless and until Defendant is required to make them truthful.

## CLASS ALLEGATIONS

53. Plaintiffs bring this class action lawsuit on behalf of themselves, the general public, and those similarly situated, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following group of similarly situated persons, defined as follows:

> **Class**: All persons in California who purchased one or more of the Tear Free Products, for personal, family, or household use, from four years preceding this filing to the present.

54. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

55. Numerosity: Plaintiffs do not know the exact size of the Class, but it is estimated that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

56. Common Questions Predominate: This action involves common questions of law and fact to the potential Class because each Class member's claim derives from the same deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products are tear free. The common questions of law and fact predominate over individual

questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. Among the questions of law and fact common to the Class are:

a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are false, deceptive, and/or unlawful;

b. Whether the Products contain ingredients that irritate eyes;

c. Whether Defendant's actions violate the California laws invoked herein;

d. Whether the Tear Free Claims cause the Products to command a price premium in the market;

e. Whether Defendant's advertising and marketing regarding the Products was likely to deceive reasonable consumers;

f. Whether the Tear Free Claims are material to a reasonable consumer;

g. Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

h. The amount of profits and revenues earned by Defendant as a result of the conduct;

i. Whether Class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j. Whether Class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

57. Typicality: Plaintiffs' claims are typical of the Class because they each purchased a Tear Free Product during the class period in reliance on Defendant's Tear Free Claims. The Tear Free Claims appear in the same prominent manner on each of the Products. Thus, Plaintiffs and Class members sustained the same injuries and damages arising out of Defendant's conduct in violation of the law. The injuries and damages of each Class member were caused directly by Defendant's wrongful conduct in violation of law as alleged.

58. Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all Class members because it is in their best interests to prosecute the claims alleged

herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with or antagonistic to the interests of Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and the interests of the Class. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all Class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

59. Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

60. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFFS' FIRST CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, *et seq.* ("CLRA"))**
**On Behalf of Plaintiffs and the Class**

61. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

62. Plaintiffs and other Class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

63. The Products that Plaintiffs (and other similarly situated Class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

64. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

65. Defendant's acts and practices, set forth in this Class Action Complaint, led Plaintiffs and other similarly situated consumers to falsely believe that the Products are tear free, i.e., that they will not irritate, sting, or burn eyes or cause tears. By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, Defendant has violated and continues to violate § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(9) of the CLRA. In violation of California Civil Code § 1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods it sold. In violation of California Civil Code § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(9), Defendant has advertised goods with intent not to sell them as advertised.

66. Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class will continue to suffer harm.

67. Plaintiffs provided Defendant with notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed

to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(1), (3), and (4), on behalf of themselves and those similarly situated Class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

68. Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(e).

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code §§ 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiffs and the Class**

69. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

70. Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

71. Defendant made representations and statements (by omission and commission) that led reasonable consumers to believe that they were purchasing products that are tear free and do not irritate the eyes. Defendant deceptively concealed that the Products contain ingredients that irritate the eye and that the Products damage eye tissue.

72. Plaintiffs and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

73. Defendant's acts and omissions are likely to deceive reasonable consumers and the general public.

74. Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false

advertising, as defined and prohibited by §§ 17500, *et seq.* of the California Business and Professions Code.

75. The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

76. As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

77. Plaintiffs seek equitable relief, including restitution, with respect to their FAL claims. Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualized proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the

FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

78. Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

79. Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless packaging and marketing is modified to remove the misrepresentations and to disclose the omitted facts. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it was not entitled. Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFFS' THIRD CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code §§ 17200, *et seq.*)**
**On Behalf of Plaintiffs and the Class**

80. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

81. Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the conduct outlined in this Complaint.

82. Defendant has engaged, and continues to engage, in unfair practices as described herein, in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200 et seq. (the "UCL"), by, without limitation, making the Tear Free Claims on Products that contain eye irritants, thereby exposing consumers, including the babies and children on whom the Products are intended to be used, to the very eye irritation the Tear Free Claims promise the

Products will not cause. The harm to consumers outweighs any utility of Defendant's conduct, which offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

83. Defendant has engaged, and continues to engage, in unlawful practices as described herein, in violation of the UCL, by, without limitation, violating the following laws: (i) the CLRA as described herein; (ii) the FAL as described herein; and (iii) the Sherman Law, Cal. Health & Safety Code §§ 110390, 110395, 110398, 111730, 111765, and 111770, as described herein.

84. Defendant has engaged, and continues to engage, in fraudulent practices as described herein, in violation of the UCL, because its Tear Free Claims are likely to deceive reasonable consumers.

85. Plaintiffs and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

86. Defendant's acts and omissions are likely to deceive the general public.

87. Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by §§ 17200, *et seq.* of the California Business and Professions Code.

88. As a direct and proximate result of such actions, Plaintiffs and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

89. As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

90. Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendant as a result of Defendant's conduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiffs and the Class similarly lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the Sherman Law does not provide a direct cause of action, so Plaintiffs and the Class must allege those violations as predicate acts under the UCL to obtain relief.

91. Plaintiffs also seek equitable relief, including restitution, with respect to their UCL unlawfulness claims for violations of the CLRA and FAL and their UCL "fraudulent" claims. Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020, 1023–25 (9th Cir. 2011) (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea*

(intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

92. Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

93. Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit the sale of the Products within a reasonable time after entry of judgment, unless packaging and marketing is modified to remove the misrepresentations and to disclose the omitted facts. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it was not entitled. Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**<u>PLAINTIFFS' FOURTH CAUSE OF ACTION</u>**
**(Fraud, Deceit, and/or Misrepresentation)**
**On Behalf of Plaintiffs and the Class**

94. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

95. Defendant fraudulently and deceptively led Plaintiffs to believe that the Products are tear free.

96. The facts that the Products' ingredients cause eye irritation and that the Products are not tear free were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiffs, and material at the time the representations were made. Defendant's own back labels for the Equate Tear-Free Mild Baby Wash, Equate Tear-Free Baby Shampoo, and Equate Baby Tear-Free Detangler Spray, which caution consumers to "[a]void contact with eyes," demonstrate that Defendant knew that the ingredients it uses in the Products irritate the eyes. Those cautions appear only in fine print on the back labels of three of the Products, where

consumers do not see them. Defendant's statements concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Products. In misleading Plaintiffs and not so informing them, Defendant breached its duty to Plaintiffs. Defendant also gained financially from, and as a result of, its breach.

97. Plaintiffs and those similarly situated relied to their detriment on Defendant's fraudulent misrepresentations and omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

98. By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs and those similarly situated, without limitation, to pay a premium to purchase the Products.

99. As a direct and proximate result of Defendant's unlawful representations, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

100. Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**<u>PLAINTIFFS' FIFTH CAUSE OF ACTION</u>**
**(Negligent Misrepresentation)**
**On Behalf of Plaintiffs and the Class**

101. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

102. Defendant made the Tear Free Claims on the Product packages and led Plaintiffs to believe that the Products would not irritate, sting, or burn eyes or cause tears.

103. These representations were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Products.

104. Defendant made identical misrepresentations and omissions to all members of the Class regarding the Products.

105. Defendant knew or should have known the representations to be false and had no reasonable grounds for believing them to be true when they were made.

106. By and through such negligent misrepresentations, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant negligently induced Plaintiffs and those similarly situated, without limitation, to purchase the Products.

107. Plaintiffs and those similarly situated relied to their detriment on Defendant's negligent misrepresentations. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

108. Plaintiffs, and those similarly situated, paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's false, deceptive and misleading advertising. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**PLAINTIFFS' SIXTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of Plaintiffs and the Class**

109. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

110. Plaintiffs and members of the Class conferred a benefit on Defendant by purchasing the Products.

111. Defendant has been unjustly enriched in retaining the revenues from Plaintiffs' and Class members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products are tear free. This harmed Plaintiffs and members of the Class because they paid a price premium as a result.

112. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this relief.

113. Plaintiffs, therefore, seek an order requiring Defendant to make restitution to them and other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendant as follows:

A. Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. An award of compensatory damages in an amount to be determined at trial;

D. An award of statutory damages in an amount to be determined at trial;

E. An award of punitive damages in an amount to be determined at trial;

F. An award of treble damages;

G. An award of restitution in an amount to be determined at trial;

H. An award of nonrestitutionary disgorgement of profits in an amount to be determined at trial;

I. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

J. For reasonable attorneys' fees and the costs of suit incurred; and

K. For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: November 25, 2026

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

# EXHIBIT A

I, Monique Chaves, declare:

1. I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2. I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3. As set forth in my complaint, I purchased Equate Tear Free Baby Wash multiple times within the last four years from Walmart. I made this purchase in Pittsburg, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 18th day of November 2026, in Pittsburg, California.

Monique Chaves



Doc ID: ce56ee6f5b8700bc2ab1cd8cba5df1eec65fd4a9

# EXHIBIT B

**EXHIBIT B**

| Product | Claim | Front Label |
|---|---|---|
| Equate Tear-Free Baby Shampoo | "TEAR-FREE" |  |
| Equate Tear-Free Mild Baby Wash | "TEAR-FREE" |  |

| | | |
|---|---|---|
| Equate Baby Tear-Free Detangler Spray | “Tear-Free” |  |
| Parent’s Choice No Tears Formula Baby Wash & Shampoo | Prior label, “TEAR FREE FORMULA,” and current label, “NO TEARS FORMULATION” |  |

| | | |
|---|---|---|
| | |  |
| Parent’s Choice Tear Free Baby Bedtime Calming Bath | “TEAR FREE FORMULA” |  |